IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Darryl Keith Louis, Jr., also known as Saddiq, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 1:24-cv-00759-BHH |
| v. | ) ) | **ORDER** |
| Brian P. Stirling, Director, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

Plaintiff Darryl Keith Louis, Jr., also known as Saddiq ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, sued South Carolina Department of Corrections' ("SCDC") Director Bryan Stirling, in his official capacity, alleging that SCDC's grooming policy violates the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq*.[1] (ECF No. 1.)[2]

Defendant moved for summary judgment on Plaintiff's RLUIPA claim, and the parties fully briefed that motion. (ECF Nos. 44, 49, 52.)

Plaintiff filed a motion for preliminary injunction, and the parties fully briefed that motion. (ECF Nos. 42, 48, 51.)

---

[1] RLUIPA forbids any "person acting under color of State law" from "impos[ing] a substantial burden on" an incarcerated person's "religious exercise" "unless the [defendant] demonstrates that the imposition of the burden" "is in furtherance of a compelling government interest; and is the least restrictive means of furthering that" interest. 42 U.S.C. §§ 2000cc-1(a), 2000cc-5(4)(A)(iii).

[2] Plaintiff also asserts in his complaint that the grooming policy violates his First Amendment rights, but Plaintiff informed the Magistrate Judge in briefing that he is abandoning this claim. (ECF No. 53 at 11 n.9.) Thus, the Magistrate Judge recommends granting Defendant's motion for summary judgment as to this claim. (*Id.*) Given Plaintiff's abandonment and finding no clear error, the Court adopts the Magistrate Judge's recommendation and grants Defendant's motion for summary judgment as to Plaintiff's First Amendment claim.

Pursuant to the provisions of Title 28, U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), these pending motions were referred to a United States Magistrate Judge for consideration.

This matter is now before the Court for review of Magistrate Judge Shiva V. Hodges' Report and Recommendation ("Report"). (ECF No. 53.) The Magistrate Judge recommends granting in part[3] and denying in part Defendant's motion for summary judgment, allowing Plaintiff's RLUIPA claim to proceed to trial, and granting Plaintiff's motion for preliminary injunction. (*Id.* at 44.) Defendant filed objections to the Report. (ECF No. 57.) This matter is ripe for review.

## FACTUAL AND PROCEDURAL BACKGROUND

The Report contains a detailed summary of this case and sets forth the correct legal standard. Because no party objects to these portions of the Report, the Court incorporates the facts, procedural history, and legal standard from the Report without a recitation.

## STANDARD OF REVIEW

The magistrate makes only a recommendation to this Court. The recommendation has no presumptive weight, and responsibility for making a final determination remains with this Court. *Mathews v. Weber,* 423 U.S. 261, 270-71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report to which a specific objection is made, and this Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate

---

[3] *See supra* note 1.

with instructions." *Id.* If a litigant objects only generally, the court need not explain adopting the Report and must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

## DISCUSSION

### I. RLUIPA Claim

#### a. Exhaustion of Administrative Remedies

As an initial matter, the Magistrate Judge recommends that the Court deny Defendant's motion for summary judgment based on a failure to exhaust administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).[4] (ECF No. 53 at 20.) Defendant objects to this recommendation, arguing that the step 2 grievance Plaintiff filed in May 2015 should not be considered as a step 2 for Plaintiff's 2023 grievance. (ECF No. 57 at 2-3.) "Defendant believes Plaintiff has failed to offer a [sic] proof that he has filed a step two in 2023 or 2024 for the present matter." (*Id.*)

The parties do not dispute the following facts relevant to this issue: Plaintiff filed a grievance on May 4, 2015, asking for the grooming policy to be changed so he could grow a beard to 1/4 inch due to his religious practice ("2015 grievance"); the 2015 grievance was received by the Inmate Grievance Coordinator ("IGC") on May 7, 2015; the 2015 grievance was returned to Plaintiff, and Plaintiff refiled it on May 9, 2015; the refiled 2015

---

[4] The PLRA amended section 1997e so that it now provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* § 1997e(a). Accordingly, before Plaintiff may proceed with his claims in this Court, he must first exhaust his administrative remedies.

3

grievance was received by the IGC on May 19, 2015; the Warden rendered a decision on May 21, 2015; Plaintiff filed a step 2 grievance on May 25, 2015; the SCDC replied on December 10, 2015, finding Plaintiff's 2015 grievance moot based upon revisions made to the grooming policy, effective November 30, 2015, in accordance with the ruling in United States Supreme Court decision *Holt v. Hobbs*[5]; Plaintiff filed another grievance on October 9, 2023, requesting to grow a four-inch or "fist-full length" beard for religious reasons ("2023 grievance"); the 2023 grievance was received by the IGC on October 11, 2023; and the 2023 grievance was returned to Plaintiff as duplicative, noting that Plaintiff had already filed on this issue and the grooming policy states the maximum beard length is 1/2 inch. Plaintiff then sent a request to staff member ("RTSM") form directly to Felecia McKie, the Inmate Grievance Chief Branch Coordinator. The parties, however, dispute what happened next.

As to the RTSM, Plaintiff states that he "request[ed] [McKie] to review the grievance in an effort to exhaust all available remedies" and that "Ms. McKie has yet to respond." (ECF No. 20-2 at 4.) He also states in his complaint filed on February 8, 2024, that he sent the RTSM with a grievance attached so McKie could review and determine if the grievance may be processed and forwarded to the "next/final step" and that over 45 days have passed without a response from McKie. (ECF No. 1 at 8.)[6] McKie states in her affidavit that she believes she did respond via a mailed written response on April 18, 2024, after this case was filed, and that she informed Plaintiff that his grievance would

---

[5] 574 U.S. 352 (2015).
[6] SCDC policy provides that all RTSM should be responded to within 45 calendar days from date of entry. (ECF No. 53 at 18 (quoting SCDC Policy GA-06.04 at 3.6).) As noted by the Magistrate Judge, while Defendant argues that this Policy does not apply to Plaintiff, Defendant does not identify what policy it believes was applicable and/or how long McKie had to timely respond to Plaintiff's RTSM. (*Id.* at 19 n.13.)

4

not be re-opened because it is duplicative. (ECF No. 21-2 ¶ 12.) Defendant did not provide the Court with a copy of the April 18, 2024, written response McKie believes she mailed directly to Plaintiff. (*Id.*)

As noted in the Report, the only argument Defendant raises concerning Plaintiff's failure to exhaust is that Plaintiff failed to file an appeal with the Administrative Law Court concerning the relevant issue. (ECF No. 53 at 19.) Plaintiff admittedly did not appeal. Rather, Plaintiff argues that an appeal is not necessary, relying on *Wolfe v. Shepard*[7] wherein the district court stated that an inmate satisfies the PLRA's exhaustion requirement by completing SCDC's grievance procedure through the Step 2 grievance. (*Id.*) The Magistrate Judge notes that Defendant does not address the court's holding in *Wolfe*, and then she recommends denying Defendant's motion on exhaustion grounds without further explanation. (*Id.*)

In his objections, Defendant states that he "does not dispute Wolfe," and he concedes that Plaintiff filed a step-2 on May 25, 2015. However, he "asserts [that] Plaintiff's having filed a step-2 grievance nine (9) years ago when the *Holt* decision came out, should not be considered as a step-2 for his 2023 claim." (ECF No. 57 at 2.)

Upon review, the Court agrees with Defendant's assertion and to the extent the Magistrate Judge's recommendation was based on a finding that Plaintiff had exhausted his administrative review of his 2023 grievance because he filed a step 2 grievance with regard to his 2015 grievance, the Court rejects this reasoning. That said, the Court adopts the Report's recommendation because, based on the record set forth above, Plaintiff did

---

[7] *Wolfe v. Shepard*, No. 4:21-CV-0939-JD-TER, 2023 WL 2168732, at *1 (D.S.C. Jan. 27, 2023), *R&R adopted*, No. 4:21-CV-0939-JD-TER, 2023 WL 2166959 (D.S.C. Feb. 22, 2023).

5

not get a timely response to his RTSM, which, in turn prevented him from pursuing a proper Step 1 Grievance. Plaintiff waited 45 days for a response before filing the instant suit and, thus, has shown that he exhausted all levels of administrative review available to him. *See Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it."); *Zander v. Lappin*, 415 F. App'x 491, 492 (4th Cir. Mar. 10, 2011) ("[W]hen prison officials prevent inmates from using the administrative process . . . , the process that exists on paper becomes unavailable in reality."); *see also Hinojos v. Bowers*, No. 2:14-CV-01800-DCN, 2015 WL 4878812, at *9 (D.S.C. Aug. 14, 2015) (finding that plaintiff made sufficient attempts to exhaust the administrative remedies available to him where he was unable to file a proper grievance because he could not get a response to his RTSM form).

While McKie attests that she did respond to Plaintiff's RTSM, no dated response evidencing that she in fact timely did so was provided to the Court. Thus, on this record and viewing the facts in Plaintiff's favor, the Court finds that Defendant has failed to carry his burden of establishing that Plaintiff failed to exhaust his administrative remedies. *Anderson v. XYZ Corr. Health Servs.*, 407 F.3d 674 (4th Cir.2005). Therefore, the Court adopts the Report's recommendation based on the reasoning set forth herein and denies Defendant's motion for summary judgment based on a failure to exhaust administrative remedies.

    b. **Merit-based Objections**

Defendant objects to the Report's statement that Plaintiff has submitted "undisputed evidence that SCDC has substantially pressured him to modify his behavior

6

and violate his beliefs." (ECF No. 53 at 26.) According to Defendant, Plaintiff cannot show that SCDC's grooming policy "burdens [his] religious belief or caused [him] irreparable harm." (ECF No. 57 at 4.) Defendant relies on Plaintiff's disciplinary sanctions, which Defendant contends "had nothing to do with [Plaintiff] refusing to cut his beard or shave." (*Id.*) Defendant also states there is no evidence that Plaintiff was subjected to "loss of meals" due to the length of his facial hair and that, other than Plaintiff's own affidavit, there is no evidence that Plaintiff was subjected to "various punishments" for refusing to abide by the grooming policy.

Under RLUIPA, the inmate bears the initial burden of establishing that a prison policy substantially burdens his or her ability to practice in accordance with a sincerely held religious belief. *See Incumaa v. Stirling*, 791 F.3d 517, 525 (4th Cir. 2015). While RLUIPA does not define "substantial burden," the Fourth Circuit has held that the term has the same meaning as it does in the First Amendment context. *See Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006). And in that context, "a substantial burden is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning the precepts of her religion on the other hand." *Id*. (cleaned up).

Here, upon review, it is evident that SCDC's grooming policy provides clear consequences, including the removal of privileges as well as the forced shaving of inmates, where inmates do not comply with the policy. (*See* ECF No. 21-4 at 4.) And the Fourth Circuit has found that "removing privileges in [an] effort to compel compliance, despite not physically forcing [an] inmate to cut his hair, qualifies as [a] substantial

7

burden." *Couch v. Jabe*, 679 F.3d 197, 200-01 (4th Cir. 2012) (citing *Warsoldier v. Woodford,* 418 F.3d 989, 995-96 (9th Cir. 2005)); *see also Greenhill v. Clarke*, 944 F.3d 243, 252 (4th Cir. 2019) (finding plaintiff "met his initial showing under RLUIPA that the VDOC grooming policies he challenged substantially burdened his religious practice of maintaining a four-inch beard" where his non-compliance forecloses the privilege of returning to a general population environment). Accordingly, the Court overrules this objection and finds that Plaintiff has met his initial showing under RLUIPA that SCDC's grooming policy substantially burdens his religious practice of maintaining a four-inch beard.[8]

### c. New Evidence

Defendant also objects to the Report's finding that he has failed to show that SCDC's grooming policy is the least restrictive means of furthering a compelling governmental interest and to address Plaintiff's alternative suggestion to the grooming policy. In support of his belief that this conclusion was in error, Defendant repeats arguments previously made and provides new evidence to show that the grooming policy is the least restrictive means of furthering the compelling government interests he identified[9] and to address Plaintiff's alternative suggestion. Indeed, Defendant submits a supplemental affidavit of Colie Rushton, the Director of Security Emergency Operations.

---

[8] Defendant also states that he is reiterating his argument that Plaintiff's religion does not require him to have a fist-length beard. (ECF No. 57 at 9 (stating that he is maintaining the same argument that Plaintiff has failed to show that modifying his behavior will infringe his free exercise of religion because "[n]ot every Muslim grows their beard to fist-length").) However, it is well established that rehashing an argument previously made does not constitute a specific objection to the Report. *Baccus v. Stirling*, No. 8:18-CV-1880-JFA-JDA, 2019 WL 978866, at *2-3 (D.S.C. Feb. 28, 2019), *aff'd*, 776 F. App'x 142 (4th Cir. 2019). Thus, even construing this as an objection, the Court finds no clear error in the Magistrate Judge's finding that this argument is without merit.

[9] The parties do not dispute that security, safety, order, hygiene, identifying inmates and escaped inmates, and limiting contraband are compelling governmental interests.

8

(ECF No. 57-1.) Therein, Director Rushton states that the time required to conduct the search suggested by Plaintiff would be disruptive to inmate daily movement and "does not seem practical". (*Id.*) He further states that Plaintiff's alternative suggestion "does not seem reasonable" because "beard texture varies from person to person." (*Id.*) Lastly, he states that "it appears Plaintiff further suggested the Correctional Officers to search beards from behind the inmate," which he believes puts officers in a "precarious position" as an "inmate could easily bite the Officer's hand."[10] (*Id.*).

Even considering this new evidence and upon a *de novo* review,[11] the Court finds that Defendant has failed to show that the grooming policy is the least restrictive means of furthering the interests of security, safety, order, hygiene,[12] identifying inmates and escaped inmates, and limiting contraband[13] and to address Plaintiff's alterative suggestion. (ECF No. 53 at 27.) The Court notes that Defendant has not put forth any evidence that Plaintiff's proposed search would require an extensive period of time, thereby making it not "practical." Indeed, at least one court has stated that such a search

---

[10] Upon review, the Court finds that Plaintiff did not make this suggestion and, thus, this suggestion was not discussed or addressed by the Magistrate Judge in her Report. Rather, the Report only mentions an officer being behind an inmate in the context of an officer conducting a pat-down search of an inmate. (ECF No. 53 at 28-29.)

[11] "The district court's decision whether to consider additional evidence is committed to its discretion, and any refusal will be reviewed for abuse." *Doe v. Chao*, 306 F.3d 170, 183 & n.9 (4th Cir. 2002). "[A]ttempts to introduce new evidence after the magistrate judge has acted are disfavored," though the district court may allow it "when a party offers sufficient reasons for so doing." *Caldwell v. Jackson*, 831 F. Supp. 2d 911, 914 (M.D.N.C. 2010) (listing cases). Here, Defendant does not provide any reason(s) for introducing new evidence. But given that it appears the supplemental affidavit was provided in an effort to expand on and support assertions previously made and considered by the Magistrate Judge, the Court will consider this evidence.

[12] As to this interest, Plaintiff provided evidence, including SCDC's hygiene and cleanliness policies, that in keeping with his religion he spends approximately 100 minutes cleansing his beard per day to prepare for prayer. (ECF No. 53 at 31 n.20.) Defendant does not address this evidence.

[13] As to this interest, Defendant provided no evidence that Plaintiff, or any other inmate, has ever concealed anything in their beards. (*Id.* at 28.) *See also Sims*, 400 F. Supp. 3d at 1277 (noting that the likelihood of an inmate hiding valuable or dangerous contraband in a beard is low). Further, as noted in the Report, Plaintiff provided undisputed evidence, including pictures, that at certain periods of time during his incarceration, the grooming policy was not enforced, and he was allowed to have a full beard. (*Id.* at 28 n.17.) Defendant does not address this evidence.

9

"adds perhaps five second per search." *Sims v. Inch*, 400 F. Supp. 3d 1272, 1277 (N.D. Fl. 2019) (holding that "[p]rohibiting an inmate from growing a religiously required beard is not the least restrictive means of furthering the Department's compelling interest in security"). As to identifying inmates, and escaped inmates, Defendant attempts to address the Report's comment that "Defendant makes no attempt to identify how [an inmate's] escape in Pennsylvania" is relevant to the specific issue at hand, by stating that this example "shows how an inmate may quickly change [his] appearance by shaving his beard upon escape and avoid law enforcement." (ECF No. 53 at 34; ECF No. 57 at 11.) Yet, Defendant fails again to address why the dual-photograph system already in place at SCDC does not sufficiently address this concern. *See Carter v. Myers*, No. 0:15-2583-HMH-PJG, 2017 WL 3498878, at * (D.S.C. August 15, 2017) (recapping *Holt*'s discussion of the dual photo method, which would allow prison guards to have a bearded and clean-shaved photo). Further, as noted in the Report, Plaintiff's proposed alternative method for locating contraband that may be hidden in a beard has been found to be an effective method and is being utilized by many facilities that allow beards longer than 1/2 inch. (ECF No. 53 at 28-20.) While case law outside the Fourth Circuit and practices of other institutions are not controlling, as noted by Defendant and acknowledged by the Magistrate Judge, such case law is persuasive, and the practices utilized elsewhere are relevant. *See Rich v. Sec'y, Fla. Dep't of Corr.,* 716 F.3d 525, 534 (11th Cir.2013) (practices of other institutions are relevant but not controlling). Thus, the Court may properly take notice of the fact that Plaintiff's proposed method has been successfully implemented in other institutions, and other courts have concluded that prohibiting an

inmate from growing a religiously required fist-length beard is not the least restrictive means of furthering the compelling governmental interests identified by Defendant.

Next, in hopes of remedying the Magistrate Judge's finding that Defendant failed to offer evidence in support of any legitimate reasons for why SCDC treats Plaintiff differently than women, transgendered inmates, and inmates with applicable medical conditions,[14] Defendant provides a supplemental affidavit of Warden Tonya James. (ECF No. 57 at 6-7; ECF No. 57-2.) Therein, Warden James addresses SCDC's treatment towards a transgender inmate identified by Plaintiff (Adrian Bernard Good). (ECF No. 57-2.) Defendant states that James' supplemental affidavit "suggests that Inmate Good was warned about the grooming policy and eventually allowed the barber to cut the matted ends off of his braids." (ECF No. 57 at 7.) Defendant then argues that Plaintiff's underinclusive argument "is not a relevant issue because Plaintiff is not a transgender inmate, nor does he claim to be one." (ECF No. 57 at 11.) Additionally, while Defendant stated in his briefing before the Magistrate Judge that he "is informed nowhere in the policy creates any exception to inmates with 'certified medical condition,'"[15] he now states that a medical condition exception is necessary "to prevent the spread of infectious diseases . . . and protect the health of inmates with certain medical conditions." (*Id.*)

Upon review, the Court first notes that Plaintiff's "substantially underinclusive" argument was addressed in a footnote of the Report, wherein the Magistrate Judge simply noted that Defendant had not offered any evidence to support any legitimate reason(s) why SCDC treats Plaintiff differently than these other groups of inmates. (ECF No. 53 at

---

[14] *See* ECF No. 53 at 32-33 n.21.
[15] *See* ECF No. 52 at 5 ("Contrary to Plaintiff's argument, the Defendant is informed nowhere in the policy creates any exception to inmates with 'certified medical condition . . . .'").

11

32-33 n.21. Now, via objections to the Report, Defendant seeks to provide new evidence addressing, for the first time, the SCDC's treatment of an inmate Plaintiff identified in his briefing. Defendant does not explain why this evidence could not have been provided earlier. That said, even considering James' supplemental affidavit, and Defendant's seemingly contrary and confusing[16] statements above, the Court agrees with the Magistrate Judge that Defendant has not offered adequate explanations for the policy's seemingly underinclusiveness.

## II.     Preliminary Injunction

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *United States v. South Carolina*, 840 F. Supp. 2d 898, 914 (D.S.C. 2011) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). As the Supreme Court has noted, a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 22. The decision whether to grant a preliminary injunction is committed to the equitable discretion of the district court. *See Salazar v. Buono*, 559 U.S. 700, 714 (2010); *Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007).

---

[16] It is unclear to the Court whether Defendant is contending all inmates are treated the same with regard to the grooming policy or whether Defendant is contending SCDC treats some categories of inmates differently for valid reasons.

Here, Plaintiff filed a motion for a preliminary injunction, asking the Court for an order preventing Defendant from enforcing the grooming policy against him. (ECF No. 42.) Preliminary injunctions may be prohibitory or mandatory in nature; whereas a prohibitory preliminary injunction seeks to enjoin a party from engaging in certain action during the pendency of the case, mandatory preliminary injunctions "do not preserve the status quo" and compel a party to perform an affirmative act while the action is pending. *Incumaa v. Stirling*, No. 9:17-CV-1608-DCN-BM, 2021 WL 2291787, at *2 (D.S.C. June 4, 2021). Since Plaintiff's motion seeks to enjoin Defendant and any other SCDC personnel from enforcing the applicable SCDC grooming standards against him, the proposed preliminary injunction is prohibitory.[17]

As noted at the outset, the Magistrate Judge recommends granting Plaintiff's motion for preliminary injunctive relief. In response, Defendant states, generally, that he objects to this recommendation. As to irreparable injury, Defendant does not object to or address the reasoning set forth in the Report for finding in Plaintiff's favor on this factor. (ECF No. 53 at 41-42.) Rather, Defendant repeats his argument that the sanctions Plaintiff was subjected to had nothing to do with Plaintiff refusing to cut his beard or shave. (ECF No. 57 at 13 (referencing Plaintiff's search detail report and arguing that Plaintiff has not shown that he has been subjected to punishments for refusing to follow the grooming policy).)

---

[17] This distinction is noteworthy as "'[m]andatory preliminary injunctive relief in any circumstance is disfavored[] and warranted only in the most extraordinary circumstances.' Where a plaintiff seeks injunctive relief that would disturb the status quo of a state-run prison, principles of federalism present an additional obstacle." *Incumaa*, 2021 WL 2291787, at *2 (quoting *Taylor v. Freeman*, 34 F.3d 266, 270 n.2 (4th Cir. 1994)) (internal citation omitted).

13

Having reviewed this portion of the Report and finding no clear error, the Court agrees with and adopts the Magistrate Judge's finding that Plaintiff has established this factor. *See Miller v. Marshall*, 682 F. Supp. 3d 559, 591 (S.D.W. Va. 2023) (stating that "such a Hobson's choice [*e.g.,* forcing a plaintiff to violate his religious belief or forgo certain privileges] violates the First Amendment and RLUIPA" and finding that because plaintiff "has shown a clear likelihood of a constitutional violation, he has shown irreparable harm," (citing *Henry v. Greenville Airport Comm'n*, 284 F.2d 631, 633 (4th Cir. 1960))).

Similarly, as to the "balance of equities" and "public interest" factors, Defendant repeats his arguments that granting Plaintiff's requested relief would create safety and security concerns. (ECF No. 57 at 15.) Defendant also states that granting the requested relief will open the door to other inmates requesting to grow a fist-length beard, such that "SCDC will likely need more manpower, time, and funds . . . ." (*Id.*) Defendant then relies on Rushton's statement in his supplemental affidavit, discussed above, that Plaintiff's alternative suggestion is "not practical." (*Id.* at 15-16.)

In the absence of a specific objection to the Report, the Court reviews this portion of the Report for clear error and, having found none, the Court agrees with and adopts the Magistrate Judge's finding that the balance of harms to the parties and the public interest tip in Plaintiff's favor.

## CONCLUSION

Accordingly, for the reasons set forth herein, the Court **adopts and specifically incorporates** the Magistrate Judge's Report (ECF No. 53); **overrules** Defendant's objections (ECF No. 57); **grants** Plaintiff's motion for preliminary injunction, enjoining

Defendant and any other SCDC personnel from enforcing the grooming policy against Plaintiff; and **grants in part and denies in part** Defendant's motion for summary judgment, dismissing Plaintiffs' First Amendment claim and allowing Plaintiff's RLUIPA claim to proceed. After consideration, the Court finds this case appropriate for mediation. The Court hereby **refers** this matter to a United States Magistrate Judge for mediation.[18] If mediation is unsuccessful, the parties can proceed to trial on Plaintiff's RLUIPA claim.

    **IT IS SO ORDERED.**

                                          /s/ *Bruce Howe Hendricks*
                                          United States District Judge

March 11, 2025
Charleston, South Carolina

---

[18] Upon referral, the magistrate judge can consider whether appointment of counsel may be appropriate in this case pursuant to 28 U.S.C. § 1915(e)(1).