IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Darryl Keith Louis Jr., #279494, | ) | C/A No. 1:24-cv-00759-BHH |
| | ) | |
| PLAINTIFF, | ) | |
| v. | ) | **FINDINGS OF FACT AND** |
| | ) | **CONCLUSIONS OF LAW AND** |
| Joel Anderson, | ) | **PERMANENT INJUNCTION** |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

The following matter is before the Court on Plaintiff Darryl Keith Louis, Jr.'s complaint against Defendant Joe Anderson ("Interim Director Anderson"), the interim director of the South Carolina Department of Corrections ("SCDC"). (ECF No. 1.) Based on these findings of fact and conclusions of law, the Court finds in favor of Plaintiff and grants Plaintiff the declaratory and injunctive relief set forth below.

**PROCEDURAL HISTORY**

Plaintiff, a prisoner in the custody of SCDC, brings a claim against Interim Director Anderson under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*[1] (*Id.*)[2] Plaintiff challenges SCDC's inmate grooming policy insofar as it restricts beard length to one-half inch for male inmates. (*Id.*) He alleges that he is an adherent of the Muslim faith and that SCDC's grooming policy prohibits him from growing a fist-length beard as part of his religious exercise.

---

[1] RLUIPA forbids any "person acting under color of State law" from "impos[ing] a substantial burden on" an incarcerated person's "religious exercise" "unless the [defendant] demonstrates that the imposition of the burden" "is in furtherance of a compelling government interest; and is the least restrictive means of furthering that" interest. 42 U.S.C. §§ 2000cc-1(a), 2000cc-5(4)(A)(iii).

[2] Prior to trial, the Court granted summary judgment to Defendant on Plaintiff's First Amendment free exercise claim. (ECF No. 67.)

Pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2), the Court assigned this matter to Magistrate Judge Shiva Hodges for pretrial proceedings. Defendant filed a motion for summary judgment, and Plaintiff moved for a preliminary injunction. (ECF Nos. 42, 44.) On August 9, 2024, Magistrate Judge Hodges issued a report and recommendation ("R&R"), recommending that the Court grant in part and deny in part Defendant's motion, allowing Plaintiff's RLUIPA claim to proceed to trial, and grant Plaintiff's motion for a preliminary injunction. (ECF No. 53.) The Court adopted the R&R in full on March 11, 2025. (ECF No. 67.) The Court then appointed counsel for Plaintiff, and a bench trial on Plaintiffs' RLUIPA claim was held on December 8 and 9, 2025.[3] (ECF Nos. 91, 120-123.)

Having considered the testimony and exhibits admitted at trial, the parties' pre-trial briefs, and the parties' proposed findings and conclusions, the Court now makes the following findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure 52(a).

**FINDINGS OF FACT**[4]

**A. Plaintiff's Background and Religious Faith**

1. Plaintiff, also known as "Sadiq," is currently incarcerated in SCDC custody at Trenton Correctional Institutional. (Tr. 12/8/2025 at 8:9-9:5.)

2. Plaintiff is classified as a "Level 1," which is the minimum level of security. (Tr. 12/9/2025 at 77:5-15.)

---

[3] Prior to trial, Defendant withdrew his defense that Plaintiff failed to exhaust his administrative remedies. Thus, the only issue pending before the Court at trial was whether SCDC's grooming policy, specifically the one-half inch restriction on beards, violates Plaintiff's RLUIPA rights.

[4] These findings are based on the preponderance of the evidence presented to the Court.

3. Plaintiff was convicted of armed robbery in 2008 and is serving a 30-year sentence. (Tr. 12/8/2025 at 9:4-6; 36:10-16.)

4. Plaintiff's religious faith is Al-Islam, and he identifies and practices his faith as a Muslim. (*Id.* at 9:7-12.) Plaintiff, who embraced Islam in 2006, testified that he strives to "adhere to the rules and regulations in accordance to the Quran and the Sunnah methodology of the Prophet Muhammad." (*Id.* at 9:13-20.)

5. Plaintiff testified that his religious faith requires him to grow, and wear, a beard of at least "fist length," describing the underlying religious basis and practices, including Tahara (purification) and Wudu[5] and Ghusl (ablution) requirements, and the Prophet Muhammad's command to "trim the mustache and grow the beard." (*Id.* at 9:13-15:13.) Based on the Prophet Muhammad's command, Plaintiff regards wearing a fist-length beard as "mandatory." (*Id.* at 14:11-15:8.)

6. Plaintiff testified that he fasts, including during Ramadan, wears a headpiece called a "kufi" or a scarf called a "keffiyeh," reads the Quran and the Bible, attends Friday Jumah worship services with other Muslims, attends Islamic studies classes, and engages in at least "five obligatory prayers" each day as well as additional night prayers. (*Id.* at 13:21-15:8.) Plaintiff further testified that he observes religious practices related to the cleansing of his beard and personal grooming. (*Id.* at 15:14-16:19.)

7. Plaintiff testified that he has not sought to grow a beard to prevent SCDC or law enforcement from identifying him, and that, while incarcerated, he has never tried to escape, hidden a weapon in his beard, hidden any contraband (including

---

[5] Plaintiff testified that he spells this word differently, as "Whudu." (Tr. 12/8/2025 at 12:11-13.)

3

handcuff keys, a needle, ear buds, a SIM card, tobacco, or drugs) in his beard, or been disciplined for allowing his beard to be dirty or unkempt. (*Id*. at 31-5-32:4.) Plaintiff testified that the sole reason for his desire to have and maintain a fist-length beard is to comply with his Muslim religion. (*Id*. at 32:5-25.) Plaintiff maintains that his fist-length beard is part of his identification as a Muslim.[6] (*Id.* at 33:15-34:3.)

8.  At trial, Plaintiff offered a document into evidence showing that, on July 17, 2008, Plaintiff requested in writing that his "SCDC records be changed to reflect [his] religious preference as Islam (Muslim)" and that his request was approved by the SCDC's Senior Chaplain and his records were updated. (*Id*. at 47:24-48:2; 50:16-25; Plaintiff's Exhibit 7.) Thus, the record reflects that SCDC has recognized Plaintiff as Muslim since July 2008. (*Id.*)

9.  The Court heard testimony from Chaplain Steven Miller, an SCDC chaplain at Kershaw Correctional Institution, who is responsible for coordinating and conducting worship services, religious education, pastoral care, and recording participation in those things by inmates. (*Id.* at 57:2-25.)

10. Chaplain Miller corroborated Plaintiff's regular religious participation as a Muslim. (*Id. at* 58:1-62:1; 65:17-18.) Chaplain Miller testified, consistent with his April 26, 2024, affidavit (ECF No. 21-3), that he observed Plaintiff participating in Muslim religious activities in the chapel, including weekly religious education (Islamic Prayer & Study), worship (Islamic Jumah), and leadership classes (Islamic Leadership) with almost perfect attendance. (*Id.* at 58:13-59:8.)

---

[6] In response to a question asked by the Court, Plaintiff estimated that his beard is "about five inches" in length. ((Tr. 12/8/2025 at 46:21-25.)

11. Chaplain Miller testified that Plaintiff that was "in just about anything that Muslims would be part of, here almost every time." (*Id.* at 61:24-62:1.) Chaplain Miller further testified that he believed that the Muslim community at Kershaw Correctional Institution viewed Plaintiff as esteemed, as Plaintiff worked closely with the Inmate Muslim Coordinator. (Tr. 12/8/2025 at 59:9-25.)

12. Similarly, in his April 26, 2024, affidavit, Chaplain Miller stated: "I regard [Plaintiff] as a leading person of the Muslim community at Kershaw, and sincere in his beliefs and consistent in practicing both personal and community religious activities which are approved and outlined in the Inmate Religion Policy PS-10.5 and Handbook of Inmate Religious Policy." (ECF No. 21-3, pp. 2-3, ¶ 6.)

**B. SCDC's Grooming Policy**

13. SCDC Policy OP-22.13 § 1.1.1 limits male inmate facial hair to a maximum length of one-half inch, requires maintenance and trimming for compliance, authorizes institutional monitoring, and provides dual photographs with and without facial hair. (Plaintiff's Exhibit 1; *see also* ECF No. 21-4.)[7] SCDC's grooming policy authorizes disciplinary penalties, forced shaves using restraints as necessary, and loss of privileges—including general visitation and meals in certain circumstances—for noncompliance. (*Id*.)

14. SCDC Policy OP-22.14 identifies refusing or failing to obey orders, including "failure to follow written policy/procedure requirement (i.e., grooming standards, etc.)," as a Level 3 disciplinary offense. SCDC Policy OP-22.14, p. 28, Section

---

[7] This policy previously allowed only a one-fourth inch beard; however, the policy was changed following the U.S. Supreme Court's decision in *Holt v. Hobbs*, 574 U.S. 352, 361 (2015).

825, (available at https://www.doc.sc.gov/policy/policy-listing).[8] This policy further provides for the following possible penalties or sanctions for such an offense: (1) disciplinary detention served in an institutional restrictive housing unit, 0-30 days; (2) loss of accrued good time, 0-30 days; (3) counsel and reprimand; (4) extra duty not to exceed 40 hours; and (5) loss of privileges including canteen, television, radio, visitation, telephone, personal property, employment, other privileges/leisure activities, 0-30 days. *Id.* at pp. 14-16, Section 17. Finally, pursuant to this policy, "[t]he Disciplinary Hearing Officer may also impose any of the restrictions/sanctions that are permitted under any other parts of the disciplinary process," and are "not entitled to return to a job assignment, if removed, without approval of the Warden or affected Division Director." *Id.* at p. 16, Section 17.7-17.8.

15. In January 2025, the Magistrate Judge granted Plaintiff's motion for a temporary restraining order, enjoining "Defendant and/or any other relevant SCDC personnel from enforcing the SCDC's grooming policy standards against Plaintiff until such time that Plaintiff's motion for preliminary injunction is resolved" by this Court. (ECF No. 63, p. 5.) As noted at the outset, in March 2025, this Court granted Plaintiff's motion for a preliminary injunction. (ECF No. 67.)

16. The Court heard testimony from Warden Lashawn Peeples, the warden of the Trenton Correctional Institution ("Trenton") where Plaintiff is currently housed. (Tr. 12/9/2025 at 70:7-16.) Warden Peeples testified that Plaintiff was transferred to

---

[8] The Court can take judicial notice of matters of public record. *See Sec'y of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (holding that a court may "take judicial notice of matters of public record").

Trenton in October of 2025, and that upon Plaintiff's arrival, Plaintiff had a fist-length beard. (*Id.* at 71:10-15; 71:16-25.) Peeples testified that upon arrival, Plaintiff was directed to shave his beard and, when Plaintiff refused, he was placed in Trenton's Restrictive Housing Unit ("RHU"). (*Id.* at 72:4-73:2.) SCDC Policy OP-22.38 states: "Inmates in SCDC will be placed in [Restrictive Housing] when their presence in the general population poses a direct threat to institutional staff, the public, the inmate (to include when an inmate requires personal protection and no reasonable alternatives available), other inmates, or a clear threat to the safe, secure operation of the institution." SCDC Policy OP-22.38, p. 3, Section 1, (available at https://doc.sc.gov/sites/doc/files/Documents/policy/OP-22-38.pdf).[9]

17. Warden Peeples testified that he had no knowledge of the Court's temporary injunction prior to Plaintiff's arrival. (Tr. 12/9/2025 at 72:15-73:12.) Warden Peeples acknowledged that Plaintiff's time in RHU for not complying with the SCDC's grooming policy should have been documented in [Trenton's] RHU logbook. (*Id*. at 73:13-16.) According to Warden Peeples, while at Trenton, Plaintiff has maintained his fist-length beard and, other than Plaintiff's time in the RHU upon arrival, Plaintiff has not been disciplined for any offense. (*Id*. at 73:20-74:5.)

18. In addition to Warden Peeples' testimony, Plaintiff testified that, when SCDC enforced its grooming policy, he faced forced shaves, compelled trimming, cell restrictions, and removal of privileges, including recreation and programs, and coercive choices implicating meals and visitation. (Tr. 12/8/2025 at 18:2-19:23; 20:2-22:21; 49:18-50:1.)

---

[9] As just noted, the Court can take judicial notice of matters of public record. *See id.*

19. The Court also heard testimony from Colie Rushton, SCDC's Director of Security and Emergency Operations, who has been a SCDC employee for fifty years and worked as an associate warden and warden. (Tr. 12/9/2025 at 78:24-79:19.) Though called as a witness by Plaintiff, Mr. Rushton was offered by Defendant as an expert witness in the areas of correctional operations and security subject to this Court's December 5, 2025, pre-trial Order.[10] (*Id.* at 78:14-15; 86:13-90:7.)

20. Mr. Rushton did not review any facts, data, or evidence specifically having to do with Plaintiff; he never spoke with Plaintiff or reviewed Plaintiff's SCDC file or warden's jacket. (*Id.* at 80:6-81:8; 85:7-11.) Rather, his testimony is limited to those facts and opinions stated in his June 27, 2024, affidavit and August 22, 2024, supplemental affidavit. (S*ee* ECF Nos. 44-2; 57-1; *see also* 118.)

21. Based on his experience as a former warden and as Director of Security and Emergency Operations, Mr. Rushton testified that SCDC's grooming policy is "reasonable." (Tr. 12/9/2025 at 82:7-18; *see also* ECF No. 44-2, ¶ 3.) Mr. Rushton further testified, *inter alia*, that SCDC's grooming policy avoids the potential for security issues, including inmates hiding contraband and the possibility of resulting danger to corrections officers when transporting inmates, as well as the possibility of inmates changing their appearance in case of an escape attempt. (Tr. 12/9/2025 at 83:20-84:1; *see also* ECF No. 44-2, ¶ 5.)

22. Mr. Rushton stated that he was not aware of Plaintiff's SCDC disciplinary record, of any particular issue, problem, or concern when transporting Plaintiff, or of any escape attempt by Plaintiff. (Tr. 12/9/2025 at 82:23-84:3.)

---

[10] ECF No. 118.

23. Mr. Rushton acknowledged that his opinions did not consider any burden on Plaintiff's religion or whether any less restrictive means exist to further SCDC's interests in security and the identification of inmates other than its grooming policy. (*Id*. at 85:12-86:6.) Mr. Rushton testified that he believes all inmates should follow the SCDC's grooming policy regardless of their religion based solely on security concerns. (*Id*. at 86:2-10.)

24. On cross-examination by Defendant's counsel, Mr. Rushton cited "penological interests" regarding "contraband control" as well as additional time, training, and SCDC personnel that may be required to conduct a manual search of inmates' beards, which are longer than one-half inch. (*Id.* at 99:6-113:6.) Mr. Rushton admitted there is no current SCDC procedure or mechanism for searching longer beards, other than a visual search, and he was unaware of any testing or evaluation of any less restrictive alternatives such as an inmate's self-search while an officer visually inspects the inmate's beard.[11] (*Id.* at 102:8-113:5; 113:25-116:20.) Neither Mr. Rushton nor any other defense witness presented evidence of any additional time burden for SCDC officers, additional costs to SCDC, or the need for additional training and personnel. (*Id.* at 102:8-113:5; 113:25-116:20.)

---

[11] Plaintiff testified that SCDC already utilizes a "boss chair" when examining his beard:

> There's this device that they have called the boss chair. It's pretty much a chair but it has a metal detector mechanism. So after [the officers] do the strip search or pat down, they have me sit inside of the chair. But then on the backside of this boss chair, this device, it's like a little -- kind of like a cup holder but without the little hole in it. And it's where you put your chin on it. They actually do this for inmates who have beards and without beards. You put your chin on it and you roll it from the right and to left. Obviously, if there's something in it, it will detect it.

(Tr. 12/8/2025 at 28:19-29:4.)

25. Plaintiff testified that SCDC maintains dual photographs of inmates, including Plaintiff, with and without facial hair. Plaintiff testified to the existence of those dual photographs and that a fist-length beard had not impaired SCDC's ability to identify him. (Tr. 12/8/2025 at 30:19-31:11.) Defendant did not refute this testimony. To the contrary, defense counsel questioned Plaintiff's and Defendant's expert witness about SCDC's dual photographs. (*Id*. at 41:20-22; *see also* Tr. 12/9/2025 at 108:17-25.)

26. Defendant presented no evidence to show that Plaintiff has ever concealed contraband in his beard or attempted escape. As noted above, Plaintiff testified that he has never hidden any contraband in his beard, including razor blades, handcuff keys, needles, SIM cards, earbuds, tobacco, or drugs, and has not attempted escape. (*Id*. at 31:12-32:25.) In response, Defendant's witnesses noted generalized security concerns but did not present documented instances of issues or concerns involving inmates' beards. (*See, e.g.*, Tr. 12/9/2025 at 82:19-86:6; 99:6-111:2.)

27. Plaintiff offered testimony regarding the regular cleansing of his beard consistent with his religious obligations and practices, and he reported no hygiene issues with a fist-length beard.[12] (Tr. 12/8/2025 at 15:14-16:19.) Defendant did not refute Plaintiff's testimony regarding his hygiene practices.

28. Defendant did not call any witness in its case-in-chief and presented no data, evidence, or analysis addressing the efficacy, cost, or logistics of less restrictive

---

[12] Consistent with his testimony at trial, Plaintiff previously submitted evidence that, in keeping with his religion, and as recognized by SCDC policy, "[a] Muslim prepares for prayer by a ritual cleansing," resulting in him spending approximately "[o]ne hundred minutes cleansing his beard and praying over five times a day." (*See* ECF No. 42 at 16 (citing SCDC Policy PS-10.05 at 7.5).)

alternative means in furtherance of SCDC's interests in prison security, safety, order, hygiene, identification of inmates and escaped inmates, and contraband control.

## CONCLUSIONS OF LAW

### A. RLUIPA

In general, RLUIPA protects a prisoner from laws or governmental practices that place a "substantial burden" on the prisoner's "religious exercise." 42 U.S.C. § 2000cc-1(a). In making a RLUIPA claim, the prisoner faces the initial burden of persuasion in making his *prima facie* case. *Id.* § 2000cc-2(b). That is, the prisoner must show that the challenged law or practice substantially burdens his religious exercise. *Id.* If the prisoner is able to do so, the burden shifts to the government to show that the challenged law or practice can overcome strict scrutiny—in other words, the government must prove that its law or practice "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Id.* §§ 2000cc-1(a), 2(b).

#### 1.    Plaintiff's *Prima Facie* Case

RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." Id. § 2000cc-5(7)(A). "Congress mandated that this concept 'be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution.'" *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 696 (2014) (quoting § 2000cc-3(g)). In other words, "Congress 'intended to provide as much protection as possible to prisoners' religious rights' without overly encumbering prison operations."

11

*Coward v. Robinson*, 276 F. Supp. 3d 544, 566 (E.D. Va. 2017) (quoting *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 987 (8th Cir. 2004)).

Courts determine whether an individual's beliefs are religious by looking at whether the beliefs are (1) sincerely held and (2) religious in nature. *Moore-King v. Cnty. of Chesterfield*, 708 F.3d 560, 570-71 (4th Cir. 2013), *abrogated on other grounds* by *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 767 (2018).

Defendant does not dispute the sincerity of Plaintiff's beliefs or that Plaintiff's beliefs are religious in nature. The Court finds credible both Plaintiff's testimony and the testimony of Chaplain Miller; based on this testimony, as well as evidence concerning Plaintiff's actions while incarcerated and the other record evidence, the Court finds that Plaintiff sought to grow, wear, and maintain a fist-length beard as a religious exercise, as that term is defined by the RLUIPA. The Court further finds that Plaintiff's religious belief regarding growing and wearing a fist-length beard is sincerely held. In sum, the Court finds that there is ample evidence to show that Plaintiff's beliefs are sincerely held and religious in nature. The next question, therefore, is whether SCDC's grooming policy places a substantial burden on Plaintiff's religious exercise.

RLUIPA does not define "substantial burden," but courts understand that this requirement is satisfied "'when a state or local government, through act or omission, puts substantial pressure on an adherent to modify his behavior and to violate his beliefs.' . . . [A] government imposes a substantial burden on religious practice when it puts a person 'between a rock and a hard place'—forcing them to choose between a government-provided benefit and their religious convictions.'" *Pendleton v. Jividen*, 96 F.4th 652, 656

(4th Cir. 2024) (citation omitted) (first quoting *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006); and then quoting *Incumaa v. Stirling*, 791 F.3d 517, 525 (4th Cir. 2015)).

The record demonstrates that enforcement of the SCDC's half-inch beard policy, coupled with forced shaves, penalties (including, but not limited to, being placed in restrictive housing as Plaintiff experienced upon his transfer to Trenton Correctional Institution), and loss of privileges, "puts substantial pressure" on Plaintiff to modify his religious conduct or forfeit benefits, satisfying RLUIPA's substantial-burden threshold. The Fourth Circuit has found that "removing privileges in [an] effort to compel compliance, despite not physically forcing [an] inmate to cut his hair, qualifies as [a] substantial burden." *Couch v. Jabe*, 679 F.3d 197, 200-01 (4th Cir. 2012) (citing *Warsoldier v. Woodford*, 418 F.3d 989, 995-96 (9th Cir. 2005)); *see also Greenhill v. Clarke*, 944 F.3d 243, 252 (4th Cir. 2019) (finding plaintiff "met his initial showing under RLUIPA that the VDOC grooming policies he challenged substantially burdened his religious practice of maintaining a four-inch beard" where his non-compliance forecloses the privilege of returning to a general population environment). In *Couch*, the Fourth Circuit held that a prior Virginia Department of Corrections Policy imposed a substantial burden where inmates' non-compliance with grooming standards caused them to "have certain privileges restricted [even] for a short term[,]" including "access to personal property, movement rights, the right to eat and associate with others, recreation time, and visitation time." *Couch*, 679 F.3d at 199.

### 2. Strict Scrutiny

Having determined that Plaintiff has shown SCDC is placing a substantial burden on his religious exercise, the Court now moves to the second part of its inquiry and

examines whether SCDC has shown that its grooming policy is (1) in furtherance of a compelling governmental interest and (2) narrowly tailored to achieve that interest. 42 U.S.C. §§ 2000cc-1(a), 2000cc-2(b). The Court finds, and the parties do not dispute, that prison security, safety, order, hygiene, identification of inmates and escaped inmates, and contraband control are compelling governmental interests. Thus, the question is whether SCDC has demonstrated that denying Plaintiff a fist-length beard is the least restrictive means of furthering these interests.

Because "least restrictive means" is a relative term that "implies a comparison with other means," SCDC must "acknowledge and give some consideration to less restrictive alternatives" to determine whether an alternative "might be equally as successful as the Policy in furthering the identified compelling interests." *Faver v. Clarke*, 24 F.4th 954, 960 (4th Cir. 2022) (citing *Couch v. Jabe*, 679 F.3d 197, 203-04 (4th Cir. 2012)). In *Holt*, the U.S. Supreme Court defined "least restrictive means" as follows:

> The least-restrictive-means standard is exceptionally demanding, and it requires the government to sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y]. [I]f a less restrictive means is available for the Government to achieve its goals, the Government must use it.

*Holt*, 574 U.S. at 365 (citing *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 815, 120 S. Ct. 1878, 146 L. Ed. 2d 865 (2000) (internal quotations omitted)).

At trial, SCDC acknowledged that it already uses dual photographs, which address identification and escape-evasion concerns.  Defendant did not explain or show why dual photos are insufficient for Plaintiff. Significantly, Defendant produced no evidence that Plaintiff ever concealed contraband in his beard, or attempted to do so.  To that end, Defendant produced no evidence that any SCDC inmate has concealed contraband in

14

his beard, or attempted to do so. Further, the Court finds that Defendant has failed to establish that SCDC could not satisfy its safety and security concerns by simply searching Plaintiff's fist-length beard or, alternatively, having Plaintiff do so while a correctional officer observes. Defendant suggests that requiring correctional officers to search a prisoner's beard would take additional time, but he offered no evidence to support such an assertion. Indeed, at least one court has stated that such a search "adds perhaps five second per search." *Sims*, 400 F. Supp. 3d at 1277 (holding that "[p]rohibiting an inmate from growing a religiously required beard is not the least restrictive means of furthering the Department's compelling interest in security"). Defendant further asserts that requiring correctional officers to search a prisoner's beard would pose a risk to the physical safety of the officer if a razor or needle was concealed in the beard. That is, however, no less true for searches of inmates' hair or clothing. Defendant has failed to consider or evaluate less restrictive alternatives such as having the prisoner run his fingers, or even a comb, through his beard. For these reasons, Defendant's legitimate interests in safety and eliminating contraband cannot sustain SCDC's refusal to allow Plaintiff to grow, and maintain, a fist-length beard.

Just as the Arkansas Department of Correction did in *Holt*, Defendant in this case likewise "contends that [SCDC]'s grooming policy is necessary to further an additional compelling interest, i.e., preventing prisoners from disguising their identities . . . [and Defendant further] claims that inmates could shave their beards and change their appearance in order . . . to escape, and to evade apprehension after escaping." *Holt*, 574 U.S. at 365. (*See* Tr. 12/8/2025 at 40:8-42:23; Tr. 12/9/2025 at 84:4-9, 93:9-16, 107:23-108:25.) As to this additional compelling interest, much like the Arkansas Department of

15

Correction, Defendant has failed to explain why inmates could not be photographed without beards when first admitted to prison and periodically thereafter, as needed, should an inmate's appearance change while incarcerated. *See Holt*, 574 U.S. at 366 ("… the Department could largely solve this problem by requiring that all inmates be photographed without beards when first admitted to the facility and, if necessary, periodically thereafter. Once that is done, an inmate like petitioner could be allowed to grow a short beard and could be photographed again when the beard reached the ½-inch limit. Prison guards would then have a bearded and clean-shaven photo to use in making identifications."). Defendant's reliance at trial on speculation and unrelated historical anecdotes regarding inmates who may attempt escape does not suffice under RLUIPA's exacting standard.

The Court acknowledges that "[l]awmakers supporting RLUIPA expected that courts would apply the statute with deference to the expertise of prison administrators who must act 'consistent with consideration of costs and limited resources.'" *Fegans v. Norris*, 537 F.3d 897, 906 (8th Cir. 2008) (citing *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005)). However, the Court cannot defer where insufficient evidence is presented. *See, e.g., Salahuddin v. Goord*, 467 F.3d 263, 275 (2d Cir. 2006) (reversing grant of summary judgment on the inmates RLUIPA claim, noting that although the defendants argued they had "legitimate penological concerns about security, as well as fiscal, space, and staffing limitations" concerning offering the religious accommodations sought by the inmate, "[n]either the district court nor this court can manufacture facts out of thin air."). Here, SCDC has offered no evidence showing that its budget cannot allow fist-length beards or that its budget is different from states that allow beards longer than one-half inch. Even if costs are a factor, RLIUPA provides that the government may be required to incur

expenses in its operations to avoid imposing a substantial burden on one's exercise of religion. 42 U.S.C. § 2000cc-3(c).

Just as the Magistrate Judge was previously unpersuaded, this Court, after a trial on the merits, remains "unpersuaded that Defendant has met his burden where he primarily relies on unsupported arguments to speculate as to what might happen." (ECF No. 53, p. 36; *see also, e.g., Ramirez v. Collier*, 595 U.S. 411, 429-30 (2022) (". . . there is no indication in the record that [an inmate's spiritual advisor] would cause the sorts of disruptions that respondents fear. Respondents' argument thus comes down to conjecture regarding what a hypothetical spiritual advisor *might do* in some future case.") (italics added); *Ali v. Stephens*, 822 F.3d 766, 790 (5th Cir. 2016) (affirming grant of declaratory and injunctive relief to a Texas inmate seeking to grow a four-inch beard and noting in relevant part "[h]ere, we focus on the additional risk of permitting a four-inch beard instead of enforcing a half-inch limit."). More than a decade ago, the Supreme Court of the United States succinctly explained:

> We do not suggest that RLUIPA requires a prison to grant a particular religious exemption as soon as a few other jurisdictions do so. But when so many prisons offer an accommodation, a prison must, at a minimum, offer persuasive reasons why it believes that it must take a different course, and the Department failed to make that showing here. Despite this, the courts below deferred to these prison officials' mere say-so that they could not accommodate petitioner's request. RLUIPA, however, demands much more. Courts must hold prisons to their statutory burden, and they must not assume a plausible, less restrictive alternative would be ineffective.

*Holt*, 574 U.S. 352 at 369 (internal citations and quotations omitted). Here, Defendant has failed to present any evidence to show that SCDC "acknowledge[d] and g[ave] some consideration to less restrictive alternatives" than a one-half inch beard. *See Couch v. Jabe*, 679 F.3d 197, 203 (4th Cir. 2012) ("Although we have not explicitly set out that

requirement, we have required that the government, consistent with the RLUIPA statutory scheme, acknowledge and give some consideration to less restrictive alternatives."). Thus, as applied to Plaintiff, the Court finds that enforcing a half-inch beard limit is not the least restrictive means of furthering SCDC's compelling interests.

For the reasons stated, and as supported by the record in this case, the Court concludes that Defendant has not carried his burden under RLUIPA of showing that SCDC's grooming policy, as applied to Plaintiff, was the least restrictive means of furthering a compelling government interest.

**B. Relief**

The Court concludes that declaratory relief is appropriate to clarify the parties' rights and obligations under RLUIPA.

The Court further concludes that the factors warranting a permanent injunction in favor of Plaintiff are met here. *Mayor of Baltimore v. Azar*, 973 F.3d 258, 274 (4th Cir. 2020). Plaintiff has prevailed in showing that he has a right to wear a fist-length beard consistent with RLUIPA and that SCDC's grooming policy unlawfully burdens that right. There is no adequate remedy at law for the violation of this right, and 42 U.S.C. § 1997e(e) precludes an award of monetary damages absent physical injury. Thus, the loss of this right creates an irreparable harm that can only be remedied by injunctive relief. The injunction in this case would serve the public interest and is narrowly drawn only to the extent necessary to correct the violation of Plaintiff's right to grow a beard consistent with RLUIPA and complies with 18 U.S.C. § 3626 and Federal Rule of Civil Procedure 65.

In summary, the Court concludes that Plaintiff has met his burden of proving that SCDC's grooming policy substantially burdens his religious exercise and that Defendant

has not met his burden of proving that the policy is the least restrictive means of furthering compelling governmental interests. Therefore, the Court concludes that Plaintiff is entitled to judgment in his favor, granting declaratory and injunctive relief.

## CONCLUSION

Accordingly, after considering the evidence and applicable law, the Court makes the findings of fact and conclusions of law as stated herein. The Court **DIRECTS** the Clerk of Court to enter **Judgment** as follows:

(1) In favor of Plaintiff on his RLUIPA claim as to SCDC's grooming policy on beard length.

    a. The Court **DECLARES** that SCDC's grooming policy, which prohibits Plaintiff from wearing a fist-length beard, imposes a substantial burden on Plaintiff's religious exercise, is not justified by a compelling governmental interest, and is not the least restrictive policy. This Declaration does not require an alteration to other SCDC policies, nor does it entitle Plaintiff to an exemption from any other part of SCDC's policies, or from discipline if he uses his beard to violate SCDC's policies.

    b. The Court imposes the following **PERMANENT INJUNCTION**: Defendant[13] is enjoined from enforcing SCDC's grooming policy (OP-

---

[13] This injunction binds not only the parties to this litigation but also Defendant's officers, agents, servants, employees, attorneys, and those in active concert or participation with them who receive actual notice of this injunction. Fed. R. Civ. P. 65(d)(2).

19

22.13 § 1.1.1), or any successor or related grooming policy, to prohibit or penalize[14] Plaintiff's maintenance of a fist-length[15] beard.[16]

Counsel for Plaintiff are entitled to reasonable attorneys' fees under 42 U.S.C. § 1988 in an amount to be determined based on affidavits and records to be submitted by counsel after judgment is entered in this case.

**IT IS SO ORDERED.**

 /s/ Bruce Howe Hendricks
United States District Judge

April 23, 2026
Charleston, South Carolina

---

[14] SCDC shall not impose disciplinary action based solely on Plaintiff's beard length, including restrictive housing or "lock-up," forced shaves, loss of meals, visitation, programming, privileges, or any other benefit or privilege for which Plaintiff is otherwise eligible.

[15] For purposes of this injunction, "fist-length" means at least the length of Plaintiff's closed fist measured from the inferior aspect of the chin, up to five inches, as measured from the chin downward along the longest natural growth of the beard. (Tr. 12/8/2025 at 15:1-16:10; 47:14-47:20.)

[16] Nothing in this injunction limits SCDC's application to Plaintiff of neutral, generally applicable security or identification measures that do not substantially burden Plaintiff's religious exercise or that satisfy RLUIPA as the least restrictive means of furthering compelling interests.